UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REGINALD KING, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-321 |
| | § | |
| STEVEN C. MCCRAW, *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant Steven C. McCraw's motion for summary judgment.[1] Doc. 43. McCraw, sued in his official capacity as Director of the Texas Department of Public Safety, contends that he is entitled to judgment as a matter of law as to King's claims that the applicability of the Sex Offender Registration Act (TEX. CODE. CRIM. PRO. ANN. Art. 62.011 *et seq.* (Vernon 2009)) to him violates his Fourteenth Amendment substantive and procedural due process rights and equal protection rights and is an unconstitutional *ex post facto* law under Article I, § 10 of the United States Constitution.

After considering the motion and King's response thereto, the facts of this case, and the applicable law, the Court grants McCraw's motion for summary judgment.

A. Background

The parties agree to the essential facts underlying this lawsuit. Docs. 43 at 7-8, 49 at 1. In November, 1990, King was indicted for the offense of indecency with a child and pleaded guilty

---

[1] Kenith Adcox, sued in his official capacity as Chief of Police for the City of La Porte, filed a motion purporting to join in McCraw's motion for summary judgment. Doc. 50. On September 3, 2010, the Court entered an order granting Defendant Adcox's motion to dismiss for insufficient service of process and dismissing King's claims against Adcox. Doc. 23. The Court granted McCraw twenty one days to properly serve Adcox. *Id.* The Court has identified nothing in the record indicating that King has served Adcox properly and the docket sheet indicates that Adcox was terminated from this case on September 3, 2010. Adcox nonetheless continued to file motions to dismiss (Docs. 25, 26, 42) and for summary judgment (Doc. 50). Because the Court dismissed King's claims against Adcox, Adcox's subsequent filings are moot.

to that offense. Doc. 1 at 3. The 248th District Court for Harris County entered a probation order and deferment of adjudication of guilt against him and placed him on probation for ten years. Doc. 43 at 7. *See State of Texas v. Reginald King*, No. 580,403 (Tex. Crim. Ct.–248th District, Nov. 8, 1990). As a condition of his probation, the District Court required King to complete sex offender counseling. *Id.*

On June 13, 1996, presumably after King successfully completed sex offender counseling and served his probationary period, the 248th District Court entered an order dismissing the proceedings against King and terminating his probation. *Id.*

On June 28, 2001, the 248th District Court issued an indictment against King for the felony charge of burglary of a habitation with intent to commit theft. *Id.* at 8. *See State of Texas v. Reginald King*, No. 876,676 (Tex. Crim. Ct.–248th District, June 28, 2001) On November 26, 2001, the 248th District Court issued a second indictment against King for the felony charge of burglary of a habitation with intent to commit theft. *Id. See State of Texas v. Reginald King*, No. 876,258 (Tex. Crim. Ct.–248th District, Nov. 26, 2001). King pleaded guilty to both offenses and the District Court sentenced him to twenty years' incarceration with the Texas Department of Criminal Justice. *Id.*

On June 16, 2008, the Texas Board of Pardons and Paroles voted to release King to parole with the statutorily mandated condition that he register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure and that he undergo an evaluation to determine whether he required sex offender counseling. Doc. 43 at 8. The Texas Department of Criminal Justice released King to parole on July 7, 2008. *Id.*

In August, 2009, La Porte Police Department Sex Offender Registration Officer Huckabee contacted King and "informed him that the La Porte Police Department required that

he register as a sex offender. *Id.* On August 31, King registered as a sex offender with the La Porte Police Department. *Id.*

The requirement that King register as a sex offender as a condition of his parole in 2008 was the result of relatively recent changes to the Code of Criminal Procedure. On October 5, 1990, there was no Texas Sex Offender Registration Act. In 1991, the Texas legislature, through the Sex Offender Registration Act ("SORA"), enacted the Sexual Offender Registration Program, under which any person with a "reportable conviction or adjudication," including a conviction or adjudication for a violation of § 21.11, Indecency with a Child, of the Texas Penal Code, incurred after September 1, 1991, was required to register as a sex offender.[2] The law did not require persons with a deferred adjudication for the offense of Indecency with a Child to register.

After amendments to the Act in 1993 and 1997[3] expanded the scope of a "reportable conviction of adjudication" to include a deferred adjudication, the Texas legislature amended the Act in 2005 to increase the applicable period for a "reportable conviction or deferred adjudication."[4] While previously the Act required registration for a deferred adjudication for the offense of Indecency with a Child when the offense occurred on or after September 1, 1991, or when the court entered an order of deferred adjudication on or after September 1, 1993, the 2005 amendments made the Act applicable to all such deferred adjudications that occurred on or after September 1, 1970.[5]

An uncodified savings clause to the 2005 amendments stated that "the changes in law

[2] Act of September 1, 1991, 72nd Leg., R.S., ch. 572, TEX. GEN. LAWS 2029-32 (S.B. 259).
[3] Act of September 1, 1993, 73rd Leg., R.S., ch. 866, §1; Act of September 1, 1997, 75th Leg., R.S., Ch. 668, §1, 11, TEX. GEN. LAWS 2260-61, 2264.(S.B. 875).
[4] Act of May 26, 2005, 79th Leg., R.S., ch. 1008, (S.B. 867) (2005) (current version at TEX. CODE CRIM. PRO. ANN. § 62.001 *et seq* (Vernon 2005)).
[5] TEX. CODE CRIM. PRO. ANN. § 62.001(5)(A) and § 62.002(a).

made by this Act . . . apply to a person subject to Chapter 62, Code of Criminal Procedure, for an offense or conduct committed or engaged in before, on or after the effective date of this Act."[6]

Although he does not state as much in his complaint, subsequent to registering as a sex offender in 2009, King evidently obtained counsel to contest the applicability of the SORA to his case. King's counsel wrote to the Texas Department of Public Safety ("DPS") to dispute whether the 2005 version of the SORA applied to a person, like King, who received a deferred adjudication for violation of § 21.11 of the Texas Penal Code after September 1, 1970 but before the 2005 amendment. On January 27, 2010, the DPS responded and asserted that the SORA did apply to a case like King's and that the DPS could not remove King from the sex offender registry. Doc. 1-1 at 2. King asserts that the DPS subsequently represented in a telephone conversation with his counsel that "registering all individuals with reportable convictions or adjudications going back to 1970 is an overly burdensome process and, therefore, only those persons 'who come under the radar'[7] of DPS will be required to register." Doc. 1 at 6. King avers that he would not, therefore, "have been required to register as a sex offender . . . had he not been indicted, convicted, and subsequently paroled for burglary of a habitation, an offense that bears no relationship to the SORA." *Id.* at 7.

B. Legal Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

---

[6] Act of May 26, 2005, 79th Leg., R.S., ch. 1008 § 4.01(a), (S.B. 867) (2005).
[7] The Court notes that throughout their submissions, both parties use the phrase "under the radar" to mean "detected" or "noticed." The phrase more commonly refers to something that has *escaped* detection or is going unnoticed, but the parties' intended meaning is clear enough from the context.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor").

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific

facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

C. Analysis

Seeking declaratory and injunctive relief, King brings three distinct constitutional challenges to the SORA. First, he contends that the text of the SORA does not encompass a person with his criminal record, that the SORA therefore does not apply to him, and that the DPS' and City of La Porte Police Department's requirement that he register as a sex offender despite the SORA's not applying to him violates his right to due process in violation of the Fourteenth Amendment. *See* Doc. 1 at 7. Second, King argues that even if the SORA did apply to him, the 2005 amendment, which required him to register as a sex offender for a deferred adjudication that took place 15 years prior, amounts to an unconstitutional *ex post facto* law either because the legislature intended it to be punitive, or because its effects are punitive as applied to King. Third, King contends that the policy by which the DPS administers the SORA registration for past offenders[8] violates King's Fourteenth Amendment right to equal protection.

I. Due Process

In his complaint, King disputes the constitutionality of the DPS' requirement that he register as a sex offender under the SORA on Fourteenth Amendment Due Process grounds. Doc. 1 at 7. King contends that he "is not required to register as a Sex Offender" because the plain text of the 2005 amendment, which expanded the temporal applicability of the SORA, did not include someone in his circumstances. *Id.* King's right to due process has been violated, he alleges, because "[t]here is no legitimate government interest in requiring persons to register as sex offenders that are not under the purview of Chapter 62 of the Texas Code of Criminal Procedure." *Id.* at 8.

---

[8] King contends that the DPS requires offenders, like King, who became subject to the SORA only by the 2005 amendment expanding the temporal scope of the Act to register only if they come to the attention of the DPS through subsequent experience in the state criminal justice system. *See* Doc. 1 at 9. Thus, King contends that the DPS' would not have required him to register had he not been arrested in 2001 for burglary of a habitation and subsequently appeared before the Parole Board in 2008.

King's semantic argument lacks merit. The SORA applies "to a reportable conviction or adjudication occurring on or after September 1, 1970." TEX. CODE CRIM. PRO. ANN. § 62.002(a). A "reportable conviction or adjudication" includes an "adjudication, including a deferred adjudication, that . . . is a conviction for or an adjudication for or based on . . . a violation of Section 21.11 (Indecency with a child)." § 62.001(5)(A). King does not dispute that he has a deferred adjudication from 1990 for a violation of Section 21.11. Instead, he points to the "transition clause" or "savings clause" included in the 2005 amendments that states "Except as provided by Subsection (b) of this section, the changes in law made by this Act in amending Chapter 62 . . . apply to a person subject to Chapter 62 . . . for an offense or conduct committed or engaged in before, on, or after the effective date of this Act." Section 4.01 of Acts 2005, 79th Leg., ch. 1008. Thus, concludes King, "the transition language describing the persons affected by the amendment precludes application to a person who was exempted from Chapter 62 by an earlier version of the statute." Doc. 1 at 5-6.

King ignores the curious result produced by his interpretation of the isolated phrase. If, as King suggests, the "transition language" of the 2005 amendments "precludes application to a person who was exempted . . . by an earlier version of the statute," then the amendment expanded the scope of persons required to register, but only applied to those who previously *had been required to register*, thereby accomplishing nothing. Such a reading ignores the rest of the section that gives the "transition language" context.

The section King quotes cannot be read as an isolated limitation but rather as part of a two-part savings clause: Subsection (a) is a broad statement of the SORA's temporal reach–it applies to "a person subject to Chapter 62 . . . for an offense of conduct committed or engaged in

before, on, or after the effective date of this act"[9]–subject to the express limitation in subsection (b), which limits the temporal reach of the SORA to "[c]onduct engaged in on or after the effective date of this Act . . . [t]o the extent that the changes in law made by this Act . . . change the elements of or punishment for conduct constituting a violation of Chapter 62."[10] Under the 2005 amendments, SORA applies to all persons convicted of reportable offenses since 1970 unless it is held to be a "change in the elements of or punishment for" a prior offense (and therefore an unconstitutional *ex post facto* law if applied retroactively), in which case it applies only prospectively.

King's alternate reading is absurd and he appears to have abandoned this textual argument in his response to the motion for summary judgment and introduced instead Fourteenth Amendment substantive and procedural due process claims based on the over-burdensome nature of the SORA in relation to its stated purpose and the purportedly insufficient process by which he was classified as a sex offender.

King erroneously cites *Meza v. Livingston* for the proposition that "[a]n individual has a liberty interest in being free from the SORA." Doc. 49 at 8 (citing *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010). *Meza* in fact repeated the principle that "'*prisoners who have not been convicted of a sex offense* have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions.'" *Meza* at 401 (quoting *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004)) (emphasis added). King has failed to identify the source of any right of those *who previously pled guilty to sexual offenses* to be free from sexual offender classification.

King contends that he nonetheless was denied his Fourteenth Amendment due process

---

[9] Section 4.01 of Acts 2005, 79th Leg., ch. 1008.
[10] *Id.*

9 / 14

right when the state "mechanically reclassif[ied] him as a sex offender without notice and without any individualized determination of danger to the community." Doc. 49 at 9. "When an individual is convicted of a sex offense, no further process is due before imposing sex offender conditions." *Meza*, 607 F.3d at 401 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003); *Jennings v. Owens*, 602 F.3d 652 (5th Cir. 2010)).

   *Doe* explicitly rejected the argument that sex offender registration programs premised on prior convictions for sexual offenses require an individualized determination of danger. 538 U.S. at 8. Where, as here, the state regulatory scheme is premised not on the offender's current dangerousness but on prior conviction or adjudication for a sexual offense, due process does not require any individualized hearing beyond the initial conviction or adjudication. *Id*. King's due process rights, therefore, were vindicated when he pled guilty to the covered offense of indecency with a child. Because King's due process rights were not violated by the subsequent requirement that he register as a sex offender, the Defendant is entitled to summary judgment on this claim.

   II. *Ex Post Facto* Law

   King also contends that the SORA violates Article I, Section 10 of the United States Constitution because the registration requirement is retroactive and punitive in effect as applied to King.[11] Doc. 1 at 8. Any law which imposes "a punishment more severe than that assigned when a criminal act occurred violates this clause." *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004). Because the 2005 amendments to the SORA undoubtedly apply retroactively to King's

---

[11] In his complaint, King asserted that the SORA is punitive in both its intent and its effect on him. Doc. 1 at 9. King apparently has abandoned his contention that the Texas legislature intended the 2005 SORA to be punitive in nature, and in his response to the Defendant's motion for summary judgment contends only that "the Texas [SORA] is unconstitutional as applied to him." Doc. 49 at 3. Apart from the sparest mention in his original complaint, King has not alleged that the Texas legislature intended the SORA to be punitive, he has not introduced any evidence that would indicate as much, nor has the Court been able to find any indication either in the record or in case law in support of the proposition. The Court therefore proceeds to an analysis of King's contention that the SORA is punitive in its effects as it has been applied to King.

1991 offense, the only inquiry is whether the SORA, as applied to King, is punitive.

To determine whether the effect of a retrospective law is punitive, courts "refer to the seven factors noted in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as a useful framework." *Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140 (2003). The relevant factors are "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose." *Mendoza-Martinez*, 372 U.S. at 168-69.

Here, King contends that the "city of La Porte has enacted residency restrictions upon registered sex offenders" which prevent King from "permanently or temporarily resid[ing] within 1,000 feet of a video arcade, public swimming pool, school, youth center, or any other premise where children may commonly gather." Doc. 49 at 4 (citing La Porte Ord. No. 2006-2901, § 2, 6-26-06; Ord. No. 2006-2901-B, § 2, 11-12-07; Ord. No. 3308, § 2, 12-13-10). He also asserts that his "status as a registered sex offender has resulted in onerous parole conditions . . . [which include] the inability to be around persons age 17 and under, and own or operate computer equipment [sic]." *Id.* (citing TEXAS BOARD OF PARDONS & PAROLES, BOARD POLICY, BPP-POL. 145.263 (April 25, 2010). Lastly, King contends that the SORA is overly intrusive because it requires that he re-register annually with local law enforcement. *Id.* at 6.

The SORA itself does not impose any residency restrictions nor limit King's ability to own a computer. Although the City of La Porte may have imposed residency restrictions on sexual offenders, those local ordinances cannot form the basis of King's challenge to the

SORA.[12] Similarly, while the Texas Board of Pardons and Parole may have imposed restrictions on King's ability to purchase a computer without approval from his parole officer, the SORA imposes no such restrictions.[13]

King's only relevant allegation is that the SORA requires him to "re-register every year." Doc. 49 at 6. The SORA in fact requires a person with a reportable conviction to "verify registration . . . with the local law enforcement authority in any municipality where the person resides or intends to reside for more than seven days" and notify local law enforcement authority more than seven days before changing his address.[14] The Court disagrees that the simple act of registration is sufficient to constitute a "punishment" that would violate the *ex post facto* clause. The Supreme Court, applying the *Mendoza-Martinez* factors to a similar requirement in the Alaska Sex Offender Registration Act, rejected the argument that the mere act of registration, even when a registrant's information and sex-offender status were publicly available in a searchable internet database, constituted an unconstitutional punishment. *Smith v. Doe*, 538 U.S. 84, 97. Courts in Texas have come to the same conclusion regarding the Texas SORA. *See Creekmore v. Attorney General of Texas*, 341 F.Supp.2d 648 (E.D.Tex. 2004); *Coronado v. State*, 148 S.W.3d 607 (Tex.App.–Houston [14 Dist.], 2004, no pet.).

Because King has failed to demonstrate that the applicable provisions of the SORA

---

[12] Although King did not allege either in his original complaint nor in his response to the Defendant's motion for summary judgment that he was challenging the constitutionality of the City of La Porte's residency restrictions, he initially did sue Kenith Adcox in his official capacity as Chief of Police for the City of La Porte. As previously mentioned, on September 3, 2010, the Court entered an order granting Defendant Adcox's motion to dismiss for insufficient service of process and dismissing King's claims against Adcox. Doc. 23.

[13] King also has failed to introduce sufficient summary judgment evidence that he has, in fact, been restricted from owning a computer. The Board of Pardon and Parole's policy states that "to the extent directed in writing by the offender's supervising parole officer, an offender shall . . . [n]ot own, maintain or operate computer equipment without a declared purpose and the written authorization of the offender's supervising parole officer." BPP-POL. 145.263 at 3. King has made no more than the blanket allegation that the Board policy prevents him from owning a computer, but has neither alleged the existence of nor introduced a letter from his parole officer imposing this condition, nor has he alleged that he has sought permission to purchase a computer and been denied such permission.

[14] TEX. CODE CRIM. PRO. ANN § 62.051, .055 (Vernon 2011).

constitute a retroactive increase or change in punishment for his prior sexual offense, his claim under the *ex post facto* clause must fail.

### III. Equal Protection

King contends that the DPS' policy of only requiring registration by those persons subject to the SORA under the 2005 amendments who come to the attention of the DPS through their involvement in the criminal justice system violates his right to equal protection under the Fourteenth Amendment. Doc. 1 at 9. Specifically, King alleges, the DPS' policy creates an unconstitutional disparity in treatment between non-registered sex-offenders who were not arrested after the 2005 amendments and non-registered sex-offenders who were arrested and were then required to register. *Id.*

"The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996) (citations omitted). To balance these interests, courts will uphold a law that "neither burdens a fundamental right nor targets a suspect class . . . so long as it bears a rational relation to some legitimate end." *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 319-320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993).

Here, King's equal protection claim is premised on the DPS' distinction between non-registered, past sex offenders who are not arrested after the 2005 amendments to the SORA and those who are. *See* Doc. 1 at 9. Thus, King seems to assert that those who come to the attention of the criminal justice system are a suspect class. He has cited no authority for this proposition, nor does it find any basis in law. *See Carson v. Johnson,* 112 F.3d 818, 821-22 (5th Cir. 1997) ("Neither prisoners nor indigents constitute a suspect class."); *United States v. King*, 62 F.3d

13 / 14

891, 895 (7th Cir. 1995). Nor, for the reasons discussed above, does King have a fundamental right that is burdened by the DPS' policy. This Court therefore will uphold the purported DPS' policy so long as it bears a rational relation to a legitimate government purpose. *Romer*, 517 U.S. 620.

In his complaint, King alleges that the "DPS asserted in a telephone conversation with plaintiff's counsel that registering all individuals with reportable convictions or adjudication going back to 1970 is an overly burdensome process," and that the DPS therefore only required registration from those of whom the DPS became aware, typically through processing in the criminal justice system. Doc. 1 at 6. Preserving limited resources undoubtedly is a legitimate purpose, and the alleged policy accomplishes that goal by minimizing or eliminating the DPS' need to locate each individual unregistered sex-offender. To the extent that King's complaint accurately reflects the DPS' policy of administering the SORA, that policy neither burdens King's fundamental rights nor targets a suspect class. Because the policy bears a rational relation to a legitimate government purpose, it does not violate King's right to equal protection under the law, and King's claim on this ground must be dismissed.

Conclusion

For the foregoing reasons, the Court hereby

**ORDERS** that Defendant Steven C. McCraw's motion for summary judgment (Doc. 43) is **GRANTED.**

SIGNED at Houston, Texas, this 7th day of September, 2012.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

14 / 14